# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00649-CR

**In re Rudolph Gonzales Jr.**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 94,267, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In 1988, Rudolph Gonzales, Jr. was convicted by a jury of aggravated sexual assault and sentenced to thirty years' imprisonment. This Court affirmed Gonzales's conviction in 1990. *See Gonzales v. State*, No. 03-89-00008-CR (Tex. App.—Austin Jan. 31, 1990, no pet.) (not designated for publication). In his appeal, Gonzales did not attack the sufficiency of the evidence or argue any issues related to identity; his issues on appeal were whether he should have been given advice related to his right to self-representation and whether the trial court should have declared a mistrial after a juror was threatened with violence if Gonzales was convicted. *Id*.

In 2007, Gonzales filed a motion seeking DNA testing and the appointment of counsel to assist him in obtaining the testing. The State opposed Gonzales's motion, arguing that Gonzales had not shown he was entitled to testing under the statute. The trial court denied Gonzales's motion, finding that (1) Gonzales provided the police with two confessions in which he said that he and an accomplice pulled the victim behind a convenience store and that he "tried to screw her but my penis wouldn't get hard and I couldn't get it in her so I never did it to her"; (2) defense counsel conceded at the guilt/innocence phase that Gonzales attacked the victim;

(3) Gonzales testified during punishment that he attempted to rape the victim; and (4) identity was not an issue in the conviction. We affirm the trial court's order denying the motion for testing.

During the guilt/innocence phase of trial, Gonzales was identified by the victim and the clerk who was working at the convenience store on the evening of the assault. The clerk testified that she and the victim noticed Gonzales and another man loitering around the store. The victim went outside and walked behind the building, followed by the two men. Several minutes later, the other man came into the store, put a knife to the clerk's back, and told her that his friend had the victim behind the store and that they would kill her if the clerk did not give him the money in the register. The man took money and beer and fled the store. The victim also testified that she and the clerk noticed Gonzales and another man loitering near the store. She went outside to try to get their license plate number, and the men pulled her behind the store. She saw a knife in the accomplice's hand and heard Gonzales tell his friend to stab her. The accomplice put the knife against the victim's leg but did not stab her. Instead, Gonzales put his arm around the victim's neck and he and his friend forced her through a hole in a fence and made her kneel down. The accomplice left the victim with Gonzales, who pulled off the victim's shoes, pants, and underwear, keeping his hand on her throat the entire time. Gonzales unzipped his pants and "tried to have sex" with the victim, lying on top of her and placing his penis "up against [her] vagina." Because his penis was not erect, he was unable to penetrate. He laid on top of her for about ten minutes, when the accomplice returned with money and beer and the police arrived at the store. Several police officers testified about being called to the scene, taking the victim's and the clerk's statements, and searching the area for the two men. Gonzales did not call any witnesses. In closing arguments, defense counsel stated,

2

"There's no question there was contact. There's no question that he used force. . . . He admitted to it. No question as to that. That makes him guilty of sexual assault, and that's what he confessed to." Counsel argued that Gonzales was guilty of sexual assault but not aggravated sexual assault. The jury convicted Gonzales of aggravated sexual assault.

During the punishment phase, Gonzales testified that he did not know his accomplice had a knife and that he did not choke the victim, twist her arm behind her, or tell his friend to stab her. He admitted that he grabbed the victim by her arm and held her down by her shoulders using his hands but denied placing his hand on her throat. He also admitted that he "took off her clothes" and "got on top of her," saying, "Like she says, I was trying to have sex with her." He was asked whether "the whole time you were trying to put your penis in her vagina," and he said, "That's correct." He said, "I'm not innocent," and admitted that the victim did not consent and that she tore his shirt but also said, "I wouldn't say she was fighting me," and denied using force or violence.

Article 64.01 provides that a convicted person may move for DNA testing and that, if the trial court finds reasonable grounds for the motion, the convicted person is entitled to appointed counsel. Tex. Code Crim. Proc. Ann. art. 64.01 (West Supp. 2008).[1] Article 64.03 provides that a trial court may only order DNA testing if it finds that "identity was or is an issue in the case" and if the convicted person shows by a preponderance of the evidence that he "would not

---

[1] Articles 64.01 and 64.03 were amended in 2007. *See* Act of May 24, 2007, 80th Leg., R.S., ch. 1006, §§ 2, 4, 2007 Tex. Gen. Laws 3523, 3523-24. Those amendments do not apply to Gonzales's motion for DNA testing, which was filed before the amendments' effective date. *See id.* §§ 5(b), 6, 2007 Tex. Gen. Laws at 3525. When the amendments do not substantively change the statutory provisions, we will cite to the current version for convenience. Otherwise, we will cite to the original provision as indicated in the session laws.

have been convicted if exculpatory results had been obtained through DNA testing." *Id*. art. 64.03(a)(1)(B), (2)(A) (West Supp. 2008). At the time Gonzales filed his motion, article 64.03 provided that a "convicted person who pleaded guilty or nolo contendere in the case may submit a motion under this chapter, and the convicting court is prohibited from finding that identity was not an issue in the case solely on the basis of that plea." Act of May 24, 2007, 80th Leg., R.S., ch. 1006, § 4, 2007 Tex. Gen. Laws 3523, 3524. As our sister court has explained,

> While anyone may request DNA testing, by its explicit terms chapter 64 does not require the trial court to grant that request in all cases. Rather, the trial court must order testing only if the statutory preconditions are met. The court of criminal appeals has interpreted article 64.03(a)(2)(A) as requiring convicted persons to show "a reasonable probability exists that exculpatory DNA tests would *prove their innocence*." The term "reasonable probability" means a probability sufficient to undermine confidence in the outcome. A trial court does not err in denying post-conviction DNA testing where, at most, exculpatory DNA tests would "merely muddy the waters."

*Eubanks v. State*, 113 S.W.3d 562, 565 (Tex. App.—Dallas 2003, no pet.) (citations omitted).

In his motion for DNA testing, Gonzales states that he "believes" there is biological evidence that "if retested under newer and more current standards of analysis would prove that [he] is actually innocent of this crime." He "feels that evidence" was taken from the victim that would prove his actual innocence and "asserts that he had nothing to do with the sexual assault of the complainant, if in fact, a sexual assault did occur in this case." In the affidavit attached to his motion, Gonzales states, "I further assert that the facts contained in this motion are true and correct to the best of my ability, and that I believe that evidence does exist that has not been tested, or should be tested under new methods of DNA testing that would prove my innocence." In his response to

the State's objection to his motion, Gonzales asserts that a confession may not be used as the sole basis for denying a motion for DNA testing[2] but does not state how identity is an issue other than to repeat that "there is an actual innocence claim that [the] Trial Court is bound to decide."

There was no issue on direct appeal regarding the sufficiency of the evidence proving Gonzales's identity as the assailant. The victim identified Gonzales as her attacker, Gonzales provided multiple statements to the police admitting that he had "tried to screw her," and his attorney conceded that Gonzales was guilty of assault by contact, arguing only that Gonzales should not be convicted of *aggravated* sexual assault. Gonzales admitted during the punishment phase that he had attempted to have sex with the victim and never disputed that it was he who had attacked her.

Merely stating in a motion that he did not commit the offense is insufficient to require a trial court to find that identity was an issue. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(B); *Eubanks*, 113 S.W.3d at 565-66. And, although Gonzales need not "prove [his] innocence before a convicting court may order DNA testing," he must "show a reasonable probability exists that exculpatory DNA tests would prove [his] innocence." *See Kutzner v. State*, 75 S.W.3d 427, 438-39 (Tex. Crim. App. 2002). Gonzales states in his motion that he did not commit the sexual assault. However, his affidavit attached to the motion does not assert any facts supporting that assertion or assert facts tending to show he would not have been convicted if favorable DNA results had been obtained prior to trial. Neither the motion nor the affidavit identify what biological evidence might

---

[2] Under the 2007 amendments, someone who pled guilty or nolo contendere or, "before or after conviction, made a confession or similar admission" may seek DNA testing, and a trial court may not find that identity is not an issue solely on the basis of the "plea, confession, or admission." Tex. Code Crim. Proc. Ann. art. 64.03(b) (West Supp. 2008). However, as noted, that provision does not apply to Gonzales's motion, filed before the amendments' effective date.

exist. Gonzales states only that he "feels" or "believes" that evidence might have been taken from the victim, but the testimony was that Gonzales did not have an erection and was unable to penetrate the victim, and the record does not reflect whether any biological evidence was collected. Even if biological evidence existed and negative DNA results had been returned, in light of this record, we see no reason to believe that Gonzales would have been acquitted. He made several statements to the police admitting to trying to have sex with the victim against her will. The victim identified him as her assailant, and her friend identified him as one of the two men who were loitering around the store and testified that his friend robbed the store, telling her that Gonzales had the victim and would kill her if the clerk did not cooperate. Gonzales was found in the area, hiding from the police, and at punishment, he admitted to assaulting the victim.

There is no reasonable probability that negative DNA results would have established Gonzales's innocence because there was other substantial competent evidence that the jury could have relied on to convict him. *See Rivera v. State*, 89 S.W.3d 55, 60-61 (Tex. Crim. App. 2002) (Rivera "failed to show by a preponderance of the evidence a reasonable probability that exculpatory DNA tests would change the outcome of his trial, much less prove his innocence"); *Torres v. State*, 104 S.W.3d 638, 640 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("an abundance of other evidence exists in the record from which a jury could have found appellant guilty").

Whether Gonzales is entitled to an appointed attorney to assist him in obtaining DNA testing is measured under a slightly different standard. "A convicted person is entitled to appointed counsel during a DNA testing proceeding if: (1) the person informs the trial court that he wishes to submit a motion for testing, (2) the person is indigent, and (3) the court finds reasonable grounds for

a testing motion to be filed." *In re Franklin*, No. 03-07-00563-CR, 2008 Tex. App. LEXIS 4545, at *6-7 (Tex. App.—Austin June 19, 2008, no pet.) (mem. op., not designated for publication) (citing Tex. Code Crim. Proc. Ann. art. 64.01(c)). Reasonable grounds exist "when the facts stated in the request for counsel or otherwise known to the trial court reasonably suggest that a plausible argument for testing can be made." *Id.* at *7. Reasonable grounds are not present if there is no evidence that can be submitted for DNA testing or if "no viable argument for testing can be made." *Id.* As we have discussed, Gonzales admitted to the attack, the victim testified that Gonzales attacked her, the clerk's testimony corroborated the victim's testimony, there is nothing in the record to suggest that biological evidence was collected, and the testimony does not reflect that negative results would support Gonzales's claim of innocence. Therefore, the trial court did not abuse its discretion in determining that there were no reasonable grounds for filing a motion for DNA testing. *See id.* The trial court did not err by declining to appoint counsel.

We affirm the trial court's order denying Gonzales's motion for testing.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   July 24, 2009

Do Not Publish