# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00698-CR

**Roni Medearis, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
NO. D-1-DC-08-904087, HONORABLE JIM CORONADO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Roni Medearis appeals the trial court's denial of his motion for post-conviction DNA testing.[1] The facts of the underlying case are not recited in detail here because they are well known to the parties and set forth in this Court's opinion affirming Medearis's 2008 convictions for aggravated sexual assault and burglary of a habitation. *See Medearis v. State*, No. 03-08-00609-CR, 2010 Tex. App. LEXIS 4834 (Tex. App.—Austin June 23, 2010, pet. ref'd) (mem. op., not designated for publication); *see also* Tex. R. App. P. 47.4 (advising issuance of opinion no longer than necessary to advise parties of court's decision and basic reasons for it). We will affirm the trial court's order.

---

[1] This Court notified Medearis that his pro se brief was overdue and he had until May 30, 2013, to file it or his appeal would be considered on the record alone. Three days before submission, Medearis filed an untimely pro se brief, which we consider in the interest of justice.

# DISCUSSION

A jury convicted Medearis of aggravated sexual assault and burglary of a building, and trial court assessed punishment at seventy years' imprisonment for the sexual assault and sixty years' imprisonment for the burglary. *See* Tex. Penal Code §§ 22.021, 30.02. Although Medearis unsuccessfully sought to suppress DNA evidence at trial, in 2012 he filed a motion for post-conviction DNA testing seeking comparison of his blood DNA with semen samples on a "pillow and/or comforter from the bed of the alleged victim," and complains that there was no report of any comparison between his DNA and "other traces of blood inside the house." Medearis claimed the testing he requested was necessary to verify his identification as the perpetrator of the underlying offense and to substantiate his innocence. The trial court denied Medearis's motion, concluding that identity was not and is not an issue because further DNA testing, in and of itself, would not identify the perpetrator and Medearis failed to show reasonable grounds for the appointment of counsel. *See* Tex. Code Crim. Proc. arts. 64.01, .03.

On appeal, Medearis argues for the first time that he is entitled to DNA testing because his "exculpatory DNA" was "tampered with" when the crime scene was cleaned, the victim does not recall what she did with a towel or wash cloth that had "exculpatory DNA evidence" on it, police released "exculpatory evidence" (after DNA testing) seized at the house to the victim's family, and there was insufficient proof of the facts necessary to prove that Medearis committed the offenses of aggravated sexual assault and burglary.

**Standard of review**

Article 64, in relevant part, provides that a convicting court may order DNA testing only if: (1) the evidence still exists in a condition making DNA testing possible and maintained subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; (2) identity was or is an issue in the case, and (3) the convicted person establishes by a preponderance of the evidence he would not have been convicted if exculpatory results had been obtained through DNA testing. *Id*. art. 64.03(a); *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011). The Texas Court of Criminal Appeals has clarified that as to the last element, a defendant is not entitled to DNA testing "unless he first shows that there is 'greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results.'" *Gutierrez*, 337 S.W.3d at 899 (quoting *Prible v. State*, 245 S.W.3d 466, 467-68 (Tex. Crim. App. 2008)). The defendant meets this burden "if the record shows that exculpatory DNA test results, excluding the defendant as the donor of the material, would establish, by a preponderance of the evidence, that the defendant would not have been convicted." *Id*.

When reviewing the trial court's rulings under article 64, we usually give "almost total deference" to the trial court's findings of historical fact and application-of-law-to-fact issues that turn on witness credibility and demeanor, but we consider de novo all other application-of-law-to-fact questions. *Id*. at 890 (quoting *Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim. App. 2008)).

**New allegations**

Here, Medearis's allegations about a missing towel or washcloth and the alleged tampering and release of "exculpatory DNA evidence" were not presented to the trial court in his motion for DNA testing. Even had those allegations been presented, they would not entitle him to testing because they suggest that the evidence no longer exists and was tampered with. *See* Tex. Code Crim. Proc. art. 64.03(a)(1)(A)(i)-(ii) (providing that convicting court may order DNA testing under article 64 only if evidence still exists in condition making DNA testing possible, maintained in chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect). Similarly, Medearis's allegations that there was insufficient proof of the facts necessary to prove that he committed the offenses of aggravated sexual assault and burglary were not presented in his motion to the trial court or in his direct appeal to this Court. *See Medearis*, 2010 Tex. App. LEXIS 4834; *In re McBride*, 82 S.W.3d 395, 397 (Tex. App.—Austin 2002, no pet.) (noting lack of sufficiency challenge on original appeal among several factors in concluding that post-conviction DNA testing was properly denied).[2]

**Identity**

The record shows identity was not an issue in this case. The victim had an unobstructed view of Medearis's face, she identified Medearis in a photo lineup and at trial, and she testified about his bleeding injuries caused by her fight against him, resulting in the blood deposited in her home. Testing of spots of blood, including those left on the victim's clothing and a pillowcase

---

[2] We note Medearis's recent interest in seeking DNA evidence is contrary to his earlier trial strategy of suppressing DNA evidence, as well as the victim's trial testimony that Medearis took steps to avoid leaving DNA behind, including the absence of hair anywhere on his body, bringing a condom, wanting the victim to wash off, and his commenting to her about the DNA he had left—"he kept talking about the DNA, his DNA was everywhere."

4

from the bed where the assault occurred, were analyzed for DNA against a specimen collected from Medearis and yielded a positive identification of him or could not exclude him as the contributor of those spots. Even assuming another person also bled in the victim's home, such evidence would not overcome her direct identification of Medearis. As such, Medearis has not shown that "identity was or is an issue in the case." *See* Tex. Code Crim. Proc. art. 64.03(a)(l)(B); *see Eubanks v. State*, 113 S.W.3d 562, 566 n.l (Tex. App.—Dallas 2003, no pet.) (noting that identity was not issue at trial, issue was whether sexual assault occurred). Further, this record shows that Medearis admitted he was in the victim's home, the victim testified Medearis wore a condom, and the rape kit yielded no male DNA. Thus, Medearis's presence at the crime scene was undisputed and further DNA testing will not determine the identity of the perpetrator of the rape.

**Whether Medearis would have been convicted if exculpatory results had been obtained**

A trial court is authorized to order post-conviction DNA testing "only if . . . the convicted person establishes by a preponderance of the evidence that . . . the person would not have been convicted if exculpatory results had been obtained through DNA testing." *See* Tex. Code Crim. Proc. art. 64.03(a)(2)(A); *Gutierrez*, 337 S.W.3d at 899. Medearis claims that comparison of his blood DNA with semen samples on a pillow and/or comforter will exonerate him of this crime, but because the victim testified that Medearis wore a condom, and the rape kit yielded no male DNA, further DNA testing will not determine the identity of the perpetrator of the rape or exonerate Medearis. Further, the semen samples referenced in Medearis's motion were tested and the jury heard that the results eliminated a prior boyfriend, another suspect, and Medearis.[3]

---

[3] Testing was not conducted on the victim's then-boyfriend with whom she testified she was sexually active.

The fact that those samples were already tested presents another procedural problem with Medearis's request for testing. Testing under article 64 applies to evidence that "was not previously subjected to DNA testing" or that "can be subjected to newer testing techniques providing a reasonable likelihood of results that are more accurate and probative than the results of the previous test." Tex. Code Crim. Proc. art. 64.01(b). Medearis's motion seeks testing of items that were already tested and does not present any argument about newer testing techniques.

Medearis also complains that there was no report of any comparison between his DNA and "other traces of blood inside the house," but unlike his argument for testing of the pillow and comforter, he does not contend that such evidence would "exonerate" him. Rather, he merely speculates that such a comparison was made and was not reported to the court. This argument fails to show that there is DNA in existence to test. *See id*. art. 64.03(a)(1)(A)(i) (providing that convicting court may order DNA testing under article 64 only if evidence still exists in condition making DNA testing possible).

We note that "Texas courts have consistently held that a movant does not satisfy his burden under Article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing." *Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010). Here, the record contains such evidence. Several blood spots from the crime scene—including those found on the victim's clothing as a result of her fighting off her bleeding assailant and a pillowcase from the bed where the assault occurred—were tested and positively identified Medearis or could not exclude him as a contributor. Medearis was also identified by the victim. The jury heard all the evidence, including the results of the semen testing, and convicted Medearis. After reviewing this record, we conclude that Medearis has not met his burden of showing by a preponderance of evidence that there is "greater than a 50% chance

6

that he would not have been convicted if DNA testing provided exculpatory results." *Gutierrez*, 337 S.W.3d at 899.

Because the record contains no evidence showing that Medearis would not have been convicted if exculpatory results had been obtained through DNA testing and that identity was an issue in this case, Medearis did not meet his burden under article 64. As such, the trial court did not err by denying Medearis's motion for post-conviction DNA testing. Medearis's issue on appeal is overruled.

## CONCLUSION

We affirm the trial court's order.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed: August 30, 2013

Do Not Publish